IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ERIK GARCIA,                         )

                                    )

             Plaintiff,        )

                                      )      CIVIL ACTION

vs.                                      )

                                      )      Case No. 4:24-CV-01503

LA MICHOACANA, LTD.,        )

                                      )

             Defendant.     )

## COMPLAINT

COMES NOW, ERIK GARCIA, by and through the undersigned counsel, and files this, his Complaint against Defendant, LA MICHOACANA, LTD., pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG"). In support thereof, Plaintiff respectfully shows this Court as follows:

## JURISDICTION

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq*., based upon Defendant's failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff, ERIK GARCIA (hereinafter "Plaintiff") is, and has been at all times relevant to the instant matter, a natural person residing in Houston, Texas (Harris County).

3.      Plaintiff is disabled as defined by the ADA.

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking and standing.

1

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  Her motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, LA MICHOACANA, LTD. (hereinafter "MICHOACANA, LTD."), is a Texas limited company that transacts business in the State of Texas and within this judicial district.

8.      Defendant, LA MICHOACANA, LTD., may be properly served with process via its Registered Agent for service, to wit:  c/o Monty Partners, LLP, Registered Agent, 150 West Parker Road, 3rd Fl., Houston, TX  77076.

9.      According to the Harris County Property Appraiser, the listed entity which owns the parcel is LA MICHOACANA CORP, however, according to the Texas Secretary of State website, LA MICHOACANA CORP as was converted to LA MICHOACANA, LTD in 1999. As such, LA MICHOACANA, LTD. is the proper owner of the subject property.

## FACTUAL ALLEGATIONS

10.     On or about September 9, 2023, Plaintiff was a customer at La Michoacana Meat Market ," a business located at 7501 Bissonnet Street, Houston, TX  77074, referenced herein as "La Michoacana".  Attached is Plaintiff's receipt as Exhibit "1."  Also attached is a photograph documenting Plaintiff's visit to the Property.  *See* Exhibit 2.

11.     Defendant, LA MICHOACANA, LTD., is the owner or co-owner of the real property and improvements that La Michoacana is situated upon and that is the subject of this action, referenced herein as the "Property."

12.     Plaintiff lives less than a mile from the Property.

13.     As a result of the close vicinity of the Property to Plaintiff's residence, Plaintiff is routinely travelling by the Property.  After September 9, 2023, Plaintiff was travelling by the Property and intended to go back to La Michoacana Meat Market to purchase food, saw the barriers to access and was dissuaded from patronizing this store again because he remembered the hassle and potential dangers the barriers to access presented to him on his earlier visit.

14.     Plaintiff's access to the business(es) located 7501 Bissonnet Street, Houston, TX 77074, Harris County Property Appraiser's property identification number 0740090010035 ("the Property"), and/or full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages and/or accommodations offered therein were denied and/or limited because of his disabilities, and he will be denied and/or limited in the future unless and until Defendant, LA MICHOACANA, LTD., is compelled to remove the physical barriers to access and correct the ADA violations that exist at the Property, including those set forth in this Complaint.

15.     Defendant, LA MICHOACANA, LTD., as property owner, is responsible for

3

complying with the ADA for both the exterior portions and interior portions of the Property. Even if there is a lease between Defendant, LA MICHOACANA, LTD. and the tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendant's independent requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations. *See* 28 CFR § 36.201(b).

16.     Plaintiff has visited the Property twice before as a customer and advocate for the disabled.  Plaintiff intends to revisit the Property within six months after the barriers to access detailed in this Complaint are removed and the Property is accessible again.  The purpose of the revisit is to be a return customer, to determine if and when the Property is made accessible and for Advocacy Purposes.

17.     Plaintiff intends on revisiting the Property to purchase goods and/or services as a return customer living in the near vicinity as well as for Advocacy Purposes but does not intend to re-expose himself to the ongoing barriers to access and engage in a futile gesture of visiting the public accommodation known to Plaintiff to have numerous and continuing barriers to access.

18.     Plaintiff travelled to the Property twice as a customer and as an independent advocate for the disabled, encountered the barriers to access the Property that are detailed in this Complaint, engaged those barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury as a result of the illegal barriers to access present at the Property.

19.     Although Plaintiff did not personally encounter each and every barrier to access identified in Plaintiff's Complaint, Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and

advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the complaint in a subsequent visit as, for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit.  As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

20.     Plaintiff's inability to fully access the Property and the stores within in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

21.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*

22.     Congress found, among other things, that:

(i)      some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

(ii)     historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)    discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)     individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

23.     Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)     provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

     * * * * *

(iv)     invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

24.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

25.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

26.     The Property is a public accommodation and service establishment.

27.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the

Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

28.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

29.     The Property must be, but is not, in compliance with the ADA and ADAAG.

30.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property as well as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

31.     Plaintiff intends to visit the Property again in the very near future as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

32.     Defendant, LA MICHOACANA, LTD., has discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods,

services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

33.     Defendant, LA MICHOACANA, LTD., will continue to discriminate against Plaintiff and others with disabilities unless and until Defendant, LA MICHOACANA, LTD., is compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

34.     A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed, or was made aware of prior to the filing of this Complaint, that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

      i.  In front of the main accessible entrance, the access aisle to the two accessible parking spaces is not level due to the presence of an accessible ramp in the access aisle in violation of Section 502.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

     ii.  In front of the main accessible entrance, the accessible curb ramp is improperly protruding into the access aisle of the accessible parking spaces in violation of Section 406.5 of the 2010 ADAAG Standards.  This barrier to

access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the lift from the van may rest upon the ramp and create an unlevel surface.

iii.    In front of the main accessible entrance, the Property has an accessible ramp leading from the accessible parking spaces to the accessible entrances with a slope exceeding 1:12 in violation of Section 405.2 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the units of the Property because when ramps are too steep (more than 1:12) it requires too much physical arm strain to wheel up the ramp and increases the likelihood of the wheelchair falling backwards and Plaintiff being injured.

iv.    The accessible ramp providing an accessible route from the two northern accessible parking spaces has a vertical rise at the base of the ramp and at the top of the ramp in excess of a ¼ inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

v.    In front of the main accessible entrance, the accessible ramp side flares have a slope in excess of 1:10 in violation of Section 406.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for

Plaintiff to access the units of the Property because steep slopes on ramp side flares could cause the wheelchair to tip over and injure Plaintiff.

vi.     In front of the main accessible entrance, one of the two accessible parking spaces is not level due to the presence of accessible ramp side flares in the accessible parking space in violation of Sections 502.4 and 406.5 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as the van may rest upon the ramp and create an unlevel surface for Plaintiff to exit and enter their vehicle.

vii.    In front of the main accessible entrance, the access aisle is not properly marked which improperly encourages parking in the access aisle in violation of Section 502.3.3 of the 2010 ADAAG standards.  This barrier to access would make it difficult for Plaintiff to leave a vehicle when parked in this accessible parking space as it is probable a vehicle may be parked in the access aisle due to the encouragement of parking there.

viii.   As a result of the barrier to access referenced in (vi), when a vehicle improperly parks in the access aisle, the Property lacks an accessible route from the two accessible parking spaces to the accessible entrance of the Property in violation of Section 208.3.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

ix.   On the east side of the Property, there are two more accessible parking spaces, they are both missing signage in violation of section 502.6 of the 2010 ADAAG standards.

x.   On the east side of the Property, the southern most accessible parking space is not located on the shortest distance to the accessible route in violation of section 208.3.1 of the 2010 ADAAG standards.  This barrier to access would make it difficult and dangerous for Plaintiff to park in this accessible parking space and traverse to the accessible entrance as it would require Plaintiff to traverse in the vehicular way.

xi.   On the east side of the Property, due to a failure to maintain an adequate policy of maintenance, the accessible ramp providing an accessible route from the eastern accessible parking spaces has a vertical rise at the base of the ramp in excess of a ¼ inch, in violation of Sections 303.2 and 405.4 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access public features of the Property when using this accessible ramp as vertical rises on ramps are particularly dangerous as the surface of the ramp is already at a significant slope which increases the likelihood of the wheelchair to tip over due to the vertical rise.

xii.   There are no accessible parking spaces on the Property that have a sign designating an accessible parking space as "Van Accessible" in violation of section 208.2.4 of the 2010 ADAAG standards and section 502.6 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to locate a van accessible parking space.

11

xiii.   Inside La Michoacana Meat Market, all portions of the meat counter have a maximum height of 36 (thirty-six) inches from the finished floor in violation of Section 904.4 of the 2010 ADAAG standards, all portions of the meat counter exceed 36 (thirty-six) inches in height from the finished floor. This barrier to access would make it difficult for Plaintiff to properly transact business at the Property as Plaintiff is in a wheelchair which makes his height much lower than a standing individual, so a surface with a maximum height of 36 inches above the finished floor is necessary for Plaintiff to sign credit card receipts.

xiv.   Inside La Michocana Meat Market, near the refrigerated area, the interior has walking surfaces lacking a 36 (thirty-six) inch clear width, due to a policy of maximizing the number of items of sale in the store by placing items in the accessible route, in violation of Section 403.5.1 of the 2010 ADAAG standards.  Specifically, cases of bottled water for sale inhibit the clear 36 inch wide access route to below 32 inches. This barrier to access would make it difficult for Plaintiff to properly utilize public features at the Property because the width of Plaintiff's wheelchair would prevent passage through areas with a width less than 36 inches.

xv.   Defendant fails to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**RESTROOMS**

xvi.   The male restroom lacks signage in compliance with Sections 216.8 and 703 of the 2010 ADAAG standards. This barrier to access would make it difficult

for Plaintiff and/or any disabled individual to locate accessible restroom facilities.

xvii.   The door locking hardware of the male restroom is at a height that exceeds 48" from the finished floor, in violation of Section 404.2.7 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the restroom facilities.

xviii.  The restrooms have grab bars adjacent to the commode which are not in compliance with Section 604.5 of the 2010 ADAAG standards as the rear bar is not present. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely transfer from the wheelchair to the toilet and back to the wheelchair.

xix.    Due to the placement of a toilet paper dispenser within 12" above the side grab bar, there is inadequate space between the grab bar and objects placed above the grab bar in violation of Section 609.3 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to safely transfer from the wheelchair to the toilet and back.

xx.     Due to the hand dryer being placed directly in front of the sink, the sink has inadequate clear floor space in violation of Sections 606.2, 603.2 and 604.3 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

35.     The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

36.     Plaintiff requires an inspection of the Property in order to determine all of the

discriminatory conditions present at the Property in violation of the ADA.

37.    The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

38.    All of the violations alleged herein are readily achievable to modify to the Property into compliance with the ADA.

39.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

40.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendant, LA MICHOACANA, LTD., has the financial resources to make the necessary modifications. According to the Property Appraiser, the Appraised value of the Property is $757,312.00.

41.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily.

42.    The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant has available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction from the IRS for spending money on accessibility modifications.

43.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendant's parent company or itself operates a chain of La Michoacana Meat Market stores that operates 135 different stores around the United States.

44.     Upon information and good faith belief, the Property has been altered since 2010. In fact, according to Google Maps, the non-compliant accessible ramp which on the north side of the building was installed sometime after 2022.

45.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

46.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendant, LA MICHOACANA, LTD., is required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

47.     Plaintiff's requested relief serves the public interest.

48.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendant, LA MICHOACANA, LTD.

49.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendant, LA MICHOACANA, LTD., pursuant to 42 U.S.C. §§ 12188 and 12205.

50.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendant, LA MICHOACANA, LTD., to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)    That the Court find Defendant, LA MICHOACANA, LTD., in violation of the ADA and ADAAG;

(b)    That the Court issue a permanent injunction enjoining Defendant, LA MICHOACANA, LTD., from continuing their discriminatory practices;

(c)    That the Court issue an Order requiring Defendant, LA MICHOACANA, LTD. to (i) remove the physical barriers to access and (ii) alter the Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)    That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)      That the Court grant such further relief as deemed just and equitable in light of the

circumstances.

Dated: April 24, 2024

Respectfully submitted,

<u>/s/ Douglas S. Schapiro</u>
Douglas S. Schapiro, Esq.
Southern District of Texas ID No. 3182479
The Schapiro Law Group, P.L
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com